Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (I)

| | | |
|---|---|---|
| SUCN. AMADEO BLAS PINO LÓPEZ-CASTRO, ET ALS<br><br>Recurridos<br><br>v.<br><br>HERNÁN JR. MACHADO TORRES<br><br>Peticionario | KLCE202401211 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil núm.:<br>I SCI200900048 (206)<br><br>Sobre: División de Sociedad |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

**Rivera Torres, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 6 de diciembre de 2024.

Comparece ante este tribunal apelativo, el Sr. Hernán Jr. Machado Torres (señor Machado Torres o el peticionario) mediante el recurso de *certiorari* de epígrafe solicitándonos que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI) el 21 de octubre de 2021, notificada el 3 de octubre siguiente. Mediante dicho dictamen, el foro primario declaró *No Ha Lugar* a la solicitud de reconsideración instada por el peticionario, en la que impugnó la determinación del TPI en la *Resolución* del 21 de septiembre de 2021, notificada al día siguiente, a través de la cual denegó la *Moción Solicitando Sentencia Sumaria Parcial Adjudicando la Demanda sobre la Liquidación de la Sociedad Civil Joint Venture*, presentada por el señor Machado Torres.

Por los fundamentos que expondremos a continuación, denegamos la expedición del recurso solicitado.

### I.

De entrada, señalamos que las partes de epígrafe han acudido ante este Tribunal de Apelaciones en varias ocasiones dentro del

mismo pleito. De modo que, nos limitaremos a reseñar las incidencias fácticas y procesales relacionadas a la controversia ante nuestra consideración.

El 20 de febrero de 2002, el señor Amadeo Blas Pino López-Castro (señor Pino López) y el señor Machado Torres suscribieron un acuerdo que dio paso a la creación de la sociedad *Joint Venture Pino-Machado* (la Sociedad).[1] A través de esta, ambos proveían servicios profesionales de ingeniería y arquitectura, y participaban en partes iguales de las ganancias generadas.

El 20 de mayo de 2008, el señor Pino López falleció.[2] Ante ello, el 15 de enero de 2009, la sucesión de este (la Sucesión o la recurrida) instó una *Demanda* sobre división de sociedad, cobro de dinero y daños y perjuicios, en contra del señor Machado Torres.[3] En esencia, la recurrida solicitó el pago de las ganancias generadas por la Sociedad hasta el fallecimiento del señor Pino López; así como aquellas generadas con posterioridad a su muerte, pero que hubiesen surgido de contratos basados en los planos preparados por este.

Tras varios trámites procesales, el 1 de julio de 2010, el tribunal primario optó por dividir los procedimientos en dos partes.[4] Primero, el foro *a quo* determinaría si la Sucesión tenía derecho a recibir las ganancias generadas por la Sociedad luego del fallecimiento del señor Pino López. De resolverse en la afirmativa, entonces se identificaría la cantidad adeudada a la Sucesión.

Luego de otras varias incidencias procesales, el 18 de octubre de 2012, notificada el 23 de octubre siguiente, el TPI emitió una *Resolución*.[5] Mediante esta, determinó que la Sucesión tenía derecho

---

[1] Véase, Apéndice del Recurso, a las págs. 275-287.
[2] El señor Pino López dejó como únicos y universales herederos a sus hijos: Franz Amadeo Pino Delgado, Catalina Pino Soto, y a su viuda, Diany Soto Gutiérrez.
[3] Véase, Apéndice del Recurso, a las págs. 1-8.
[4] *Íd.*, a las págs. 25-26.
[5] *Íd.*, a las págs. 70-84.

tanto a la mitad de las ganancias generadas hasta el fallecimiento del señor Pino López; como a la mitad de las ganancias procedentes de contratos otorgados, luego de su muerte, y que se hubieran basado en sus planos.

Insatisfecho, el 16 de enero de 2013, el señor Machado Torres recurrió ante este Tribunal de Apelaciones mediante el recurso identificado con el alfanumérico KLCE201300073. En dicha ocasión, un Panel hermano expidió el recurso de *certiorari* y modificó la determinación recurrida. Ello, "a los fines de eliminar la partida otorgada a la Sucesión por los contratos otorgados con posterioridad a la muerte del señor Pino basada en los planos que él preparó."[6]

Resuelto lo anterior, la primera etapa del pleito fue superada, y quedaba por determinar la cuantía adeudada a la Sucesión.

Así las cosas, el 30 de octubre de 2019, el señor Machado Torres presentó una *Moción Solicitando Sentencia Sumaria Parcial Adjudicando la Demanda sobre la Liquidación de la Sociedad Civil Joint Venture.*[7] En su escrito, propuso dieciocho (18) determinaciones de hechos, e incluyó como prueba, entre otros, el informe pericial de su perito, la CPA Doris Barroso. A base de este, precisó que la Sucesión le adeudaba la cantidad de $6,825. Así pues, solicitó la liquidación de la Sociedad y el pago de la cuantía adeudada, más los intereses legales.

El 6 de diciembre de 2019, la Sucesión se opuso mediante *Oposición a Moción de Sentencia Sumaria.*[8] En resumen arguyó que los cálculos contenidos en el informe pericial, presentado por el peticionario, contenían partidas que no podían ser utilizadas, en atención a la ley del caso. Añadió que su perito, el CPA Jorge Aquino, arribó a una suma que se apartaba grandemente de la cuantía

---

[6] *Íd.*, a la pág. 104.
[7] *Íd.*, a las págs. 255-473.
[8] *Íd.*, a las págs. 475-927.

alegada por el peticionario, por lo que resultaba improcedente disponer del pleito sumariamente.[9]

Atendidos los escritos de las partes, el 21 de septiembre de 2021, notificada al día siguiente, el foro primario emitió una *Resolución* declarando *No Ha Lugar* a la solicitud del peticionario.[10] En virtud de esta, el TPI consignó dieciocho (18) hechos incontrovertidos y resolvió que aún existía controversia sobre: (1) la cantidad que el peticionario le adeudaba a la Sucesión y, (2) "la metodología utilizada por los peritos para preparar sus respectivos informes periciales y sus respectivas conclusiones."[11]

Inconforme, el 7 de octubre de 2021, el señor Machado Torres presentó una *Moción Solicitando Reconsideración de Resolución Denegando Moción de Sentencia Sumaria Adjudicando la Demanda, y Solicitando Señalamiento de Videoconferencia de Argumentación*.

Transcurridos casi tres (3) años, el 29 de agosto de 2024, el tribunal *a quo* celebró una vista sobre el estado de los procedimientos. Conforme surge de la Minuta[12], el representante legal del señor Machado Torres argumentó que la reconsideración presentada no había sido atendida por el TPI. Ante ello, el foro primario hizo constar que el tribunal había resuelto la misma el 21 de octubre de 2021, mas, por error de Secretaría, no fue notificada. Por tal motivo, ordenó la notificación del dictamen.

Así pues, el 3 de octubre de 2024, la Secretaría del TPI notificó la *Resolución* en cuestión, mediante la cual el foro primario declaró *No Ha Lugar* a la solicitud de reconsideración.[13]

Insatisfecho, el 4 de noviembre siguiente, el señor Machado Torres acudió ante este foro apelativo mediante el recurso que nos

---

[9] De conformidad al informe pericial rendido por el perito de la Sucesión, a esta se le adeudaba la suma de $643,957. Véase, Apéndice del Recurso, a las págs. 909-927.

[10] *Íd.*, a las págs. 2,378-2,390.

[11] *Íd.*, a la pág. 2383.

[12] *Íd.*, a la pág. 2425.

[13] *Íd.*, a la pág. 2428.

ocupa, imputándole al foro de primera instancia haber cometido los siguientes errores:

> ERRÓ EL TPI COMO CUESTIÓN DE DERECHO EN SU RESOLUCIÓN DENEGANDO LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL AL NO ACOGER LAS DETERMINACIONES DE HECHOS DE LA RESOLUCIÓN DICTADA EL 18 DE OCTUBRE DE 2012 QUE NO QUEDARON INVALIDADAS POR LA SENTENCIA DEL TA DEL RECURSO NÚM. KLCE201300073, Y AL NO APLICAR LA TOTALIDAD DE DICHA SENTENCIA DEL TA, NI LA ORDEN PROTECTORA DICTADA POR EL TPI EL 9 DE JULIO DE 2014, NI LA RESOLUCIÓN Y ORDEN DEL TPI DEL 27 DE JULIO DE 2015, TODO LO CUAL ES LA "LEY DEL CASO".

> ERRÓ EL TPI COMO CUESTIÓN DE DERECHO PROCESAL EN SU RESOLUCIÓN DENEGANDO LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL AL HACER CASO OMISO Y NO EVALUAR LOS DIECIOCHO (18) HECHOS MATERIALES INCONTROVERTIDOS Y SU EVIDENCIA EN APOYO, PRESENTADOS EN LA MOCIÓN DE SENTENCIA SUMARIA.

> ERRÓ EL TPI COMO CUESTIÓN DE DERECHO EN SU RESOLUCIÓN DENEGANDO LA MOCIÓN DE SENTENCIA SUMARIA PARCIAL AL DETERMINAR QUE LA METODOLOGÍA LEGAL DISPUESTA POR EL CÓDIGO CIVIL PARA LA LIQUIDACIÓN DE LA SOCIEDAD JOINT VENTURE ERA UNA "CONTROVERSIA DE HECHOS" Y NO UNA CUESTIÓN PURAMENTE DE DERECHO.

> ERRÓ EL TPI AL NO DICTAR LA SENTENCIA SUMARIA SOLICITADA, TODA VEZ QUE NO EXISTEN HECHOS MATERIALES EN CONTROVERSIA EN CUANTO A LOS INGRESOS DE LA SOCIEDAD SUJETOS A LIQUIDACIÓN, LAS DEUDAS Y LOS GASTOS DE LA SOCIEDAD A SER DEDUCIDOS, Y LOS CRÉDITOS QUE EL DEMANDADO TIENE DERECHO A RECLAMAR.

El 8 de noviembre de 2024, dictamos una *Resolución* en la que, entre otros, concedimos un término de diez (10) días a la parte recurrida para expresarse. Posteriormente solicitó prórroga, la cual le fue concedida. El 2 de diciembre corriente, la parte recurrida cumplió con lo ordenado, por lo que nos damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el apéndice del recurso; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

Todo recurso de *certiorari* presentado ante nuestra consideración debe ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil (32 LPRA Ap. V. R. 52.1). En apretada síntesis, la referida norma dispone que el recurso de *certiorari* **solamente será expedido** para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, al amparo de las Reglas 56 y 57 o de la <u>denegatoria de una moción de carácter dispositivo</u>.[14]

A su vez, aún cuando un asunto esté comprendido dentro de las materias que podemos revisar, de conformidad con la Regla 52.1 de las de Procedimiento Civil, *supra*, previo a ejercer debidamente nuestra facultad revisora sobre un caso, es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento (4 LPRA Ap. XXII-B) se justifica nuestra intervención, pues distinto al recurso de apelación, **este tribunal posee discreción para expedir el auto** el *certiorari*. *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999). Por supuesto esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan. *I.G. Builders et al. v. BBVAPR*, supra; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).

Precisa recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).[15] Así, pues, se ha

---

[14] No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

[15] Citas omitidas.

considerado que la discreción se nutre de un juicio racional cimentado en la razonabilidad y en un sentido llano de justicia y "no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Íd.*[16]

A estos efectos, la Regla 40 de nuestro Reglamento, *supra,* enumera los criterios que debemos considerar al momento de determinar si procede que expidamos el auto discrecional de *certiorari. I.G. Builders et al. v. BBVAPR, supra.* Dicha regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de

---

[16] Citas omitidas.

instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).

### III.

De entrada, advertimos que el peticionario recurre de una moción de carácter dispositivo, la cual es una de las instancias que podemos atender al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. No obstante, analizados los argumentos esbozados por el peticionario, al palio de la Regla 40 de nuestro Reglamento, *supra*, colegimos que no están presentes los criterios necesarios para intervenir con la determinación recurrida. La interferencia de este foro con el ejercicio de la facultad discrecional de los tribunales de primera instancia solo procede en situaciones en las que se demuestre que este: "(1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo". *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). Así, ha reiterado el Tribunal Supremo que "las decisiones discrecionales que toma el Tribunal de Primera Instancia no serán revocadas a menos que se demuestre que ese foro abusó de su discreción." *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).

Del análisis del expediente ante nuestra consideración, no surge que el TPI haya incurrido en un abuso de discreción o actuado bajo prejuicio o parcialidad. El peticionario tampoco demostró que el foro primario se haya equivocado en la interpretación o aplicación de una norma procesal y que, intervenir en esta etapa evitaría un perjuicio sustancial en su contra. Así pues, no encontramos

fundamento alguno que nos mueva a ejercer nuestra facultad revisora sobre el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, denegamos la expedición del auto de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


                                    LCDA. LILIA M. OQUENDO SOLÍS
                                  Secretaria del Tribunal de Apelaciones