Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ELMER FIGUEROA ARCE Y OTROS<br><br>*Demandantes-Recurridos*<br><br>v.<br><br>QUALCON GENERAL CONTRACTOR, INC Y OTROS<br><br>*Demandados*<br><br>**CARLOS D. LEBRÓN GÓMEZ, NANETTE M. DE LA ROSA MARTÍNEZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES CONSTITUIDA POR ELLOS**<br><br>***Demandados-Peticionarios*** | KLCE202500371[1] | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2024CV02795 (802)<br><br>Sobre: Daños por Vicios de Construcción y otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a <u>23</u> de junio de 2025.

Comparecen ante nos, el señor Carlos D. Lebrón Gómez, la señora Nanette M. De La Rosa Martínez y la sociedad legal de gananciales constituida por estos (en conjunto, peticionarios o Lebrón-De La Rosa) mediante recurso de *Certiorari*, en el cual solicitan la revisión de la *Resolución dejando sin efecto una Sentencia Parcial*[2] emitida el 2 de diciembre de 2024, notificada el 11 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI o foro recurrido). Mediante esta, el foro recurrido

---

[1] El recurso de epígrafe fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, con efectividad del 10 de enero de 2022, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior.

[2] Apéndice del recurso de *Certiorari*, págs. 197-201.

desestimó el caso en contra de los peticionarios y les ordenó a contestar la *Demanda*[3] en el término de veinte (20) días.

Por los fundamentos que exponemos a continuación, **denegamos** la expedición del auto de *Certiorari* solicitado.

## I.

Procedemos a exponer el trasfondo fáctico y procesal pertinente al recurso que nos ocupa. Surge del expediente que, el 21 de marzo de 2025, el TPI consolidó los pleitos **GR2024CV00221** y **CG2024CV02795.** La primera demanda se presentó el 9 de julio de 2024, cuyo número es el GR2024CV00221, esto, cuando Quality Glazing Contractors, Inc. (Quality) presentó una *Demanda*[4] en contra de los señores Elmer Figueroa Arce (señor Figueroa o recurrido), Marina Elizabeth Maronesse y la sociedad legal de gananciales compuesta por ambos (en conjunto, Figueroa-Maronesse o recurridos).

Por otro lado, el 31 de julio de 2024, los recurridos presentaron una *Demanda* en el caso **CG2024CV02795**, en contra de los peticionarios (Lebrón-De La Rosa); Qualcon General Contractor, Inc. (Qualcon); Quality; Daniel Lebrón Gómez, Rosemary Rivera y la sociedad legal de gananciales compuesta por ambos (Lebrón-Rivera); Carlos Mario Jiménez Costa, Julián De Tal y la sociedad legal de gananciales compuesta por ambos; Condiseño, Inc.; Héctor A. González Quiñones, Sutana De Tal y la sociedad legal de gananciales compuesta por ambos; Cooperativa de Seguros Múltiples; Triple S Propiedad y Compañía de Seguros A, B, C. Así pues, alegaron que los demandados incumplieron con el contrato por trabajos defectuosos, omisiones e impericia. Asimismo, establecieron, en lo pertinente, que el señor Carlos Lebrón Gómez

---

[3] Apéndice del recurso de *Certiorari*, págs. 40-52. Caso civil núm. CG2024CV02795.

[4] Apéndice del recurso de *Certiorari*, págs. 1-40. Caso civil núm. GR2024CV00221.

provocó un daño ascendiente a la cantidad de un millón trecientos mil dólares ($1,300,000.00). Además, solicitaron la devolución de los desembolsos realizados por la manufacturación de materiales por parte de Lebrón Gómez y Qualcon, por la cantidad de doscientos mil dólares ($200,000.00).

En lo pertinente a la controversia, el 25 de octubre de 2024, los peticionarios presentaron una *Moción de Desestimación*[5] en la cual expresaron, entre otras cosas, que los recurridos contrataron con Qualcon y que el señor Carlos D. Lebrón Gómez participó como "agente y empleado" de esta compañía, por lo que procedía se dictara sentencia a su favor, debido a que no existía reclamo alguno en contra de ellos, aun tomando como ciertas las alegaciones de la Demanda. Por último, manifestaron que los recurridos fallaron al no alegar acción alguna para descorrer el velo corporativo y tampoco invocaron dicho remedio.

Ese mismo día, el TPI emitió una *Orden*[6] en la que declaró *No Ha Lugar*, por el momento, la *Moción de Desestimación* presentada por los peticionarios, pues no se evidenció la separabilidad de las personas jurídicas entre Qualcon y estos.

Inconformes, el 28 de octubre de 2024, los peticionarios presentaron una *Moción de Reconsideración*[7], en la cual, en síntesis, reiteraron lo alegado en la solicitud de desestimación, en cuanto a: que los recurridos convinieron con Qualcon; que no hubo una confusión de personalidades en la que se beneficiaran los peticionarios; que la *Demanda* no contenía alegaciones que justificaran la concesión de un remedio por parte de los peticionarios; y, que el señor Lebrón Gómez participó del proyecto

---

[5] Apéndice del recurso de *Certiorari*, págs. 94-103.
[6] Apéndice del recurso de *Certiorari*, págs. 104-105. Además, según ordenado el 4 de marzo de 2025 por el Tribunal, se emitieron varias notificaciones enmendadas el 11 de marzo de 2025, a los únicos fines de incluir en la notificación al señor Héctor A. González Quiñones. Apéndice del recurso de *Certiorari*, pág. 222 y Entrada Número 33 SUMAC en el caso **GR2024CV00221**.
[7] Apéndice del recurso de *Certiorari*, págs. 106-111.

en su carácter representativo como agente y empleado de la compañía. De igual modo, insistieron en que el peso de la prueba lo tenía la parte que alegara confusión de personalidad de la corporación, por lo que imponer el peso de la prueba sobre los peticionarios, iría en contra de los principios fundamentales del derecho corporativo. Por último, solicitaron al TPI que emitiera una sentencia parcial en la que desestimara, con perjuicio, las reclamaciones realizadas en su contra.

Consecuentemente, el foro primario, el 28 de octubre de 2024, emitió una *Orden*[8] en la que determinó: "Nada que proveer por el momento, pues el demandante está en término de formular su posición".

No obstante, el 11 de noviembre de 2024, los recurridos presentaron una *Moción en Oposición a Reconsideración de Desestimación de la Demandada*[9], en la cual plasmaron las alegaciones de la *Demanda* que imputaban la responsabilidad de Carlos Lebrón Gómez como agente y empleado de Qualcon. Además, aceptaron que no existía alegación alguna sobre descorrer el velo corporativo porque esta figura no estaba relacionada a las causas de acción. Por último, estos reconocieron la personalidad jurídica separada e independiente de la persona natural y, por esto, se emplazaron a los codemandados por separado.

Posteriormente, el 12 de noviembre de 2024, los peticionarios presentaron una *Réplica a Oposición a Solicitud de Reconsideración*[10], en la cual reiteraron que Lebrón Gómez actuó en carácter representativo como oficial y empleado de Qualcon. De la misma manera, señalaron que, en su *Oposición a Reconsideración de Desestimación de la Demandada*, los recurridos reconocieron que

---

[8] Apéndice del recurso de *Certiorari*, págs. 112-113 y Entrada Número 61 de SUMAC en el caso **CG2024CV02795.**
[9] Apéndice del recurso de *Certiorari*, págs. 150-160.
[10] Apéndice del recurso de *Certiorari*, págs. 161-166.

el señor Lebrón Gómez actuó como oficial y empleado de Qualcon y que las alegaciones en su contra estaban ligadas al Contrato de Obra, relación jurídica previa entre Qualcon y los recurridos.

El 12 de noviembre de 2024, el foro primario emitió una *Resolución sobre Moc. de Desest. (Sumac 56) y Oposición a la misma …*[11] en donde declaró *No Ha Lugar* la *Moción de Desestimación* de los peticionarios debido a que no se evidenció que la contratación de los recurridos fuese exclusivamente con Qualcon y en exclusión de los peticionarios. Al día siguiente, el TPI declaró académica la *Réplica a Oposición a la Solicitud de Reconsideración*[12] presentada por los peticionarios.

Inconformes, el 20 de noviembre de 2024, los peticionarios presentaron una *Moción de Reconsideración*[13], en la cual enfatizaron que el Contrato de Obra era entre los recurridos y Qualcon, que no existía controversia y que los recurridos reconocieron esto en su *Demanda*. Por lo tanto, la admisión de los recurridos los relevaba de presentar prueba de un hecho incontrovertible. Además, incluyeron como anejo el Contrato de Servicios Profesionales[14], en el que compareció como contratante Elmer Figueroa Arce, representado por Mayra M. Vega Ramos, y como contratista compareció Qualcon, representado por su presidente, Carlos D. Lebrón Gómez.

Así las cosas, luego de evaluar la *Moción de Reconsideración*[15] de los peticionarios, el TPI emitió una *Sentencia Parcial*[16] el 20 de noviembre de 2024, en la que desestimó, sin perjuicio, las alegaciones contenidas en la Demanda del caso CG2024CV02795 presentado en contra de los peticionarios.

---

[11] Apéndice del recurso de *Certiorari*, págs. 169-170 y Entrada Número 77 de SUMAC en el caso **CG2024CV02795**.
[12] Apéndice del recurso de *Certiorari*, págs. 161-167 y Entrada Núm. 75 de SUMAC en el caso **CG2024CV02795**.
[13] Apéndice del recurso de *Certiorari*, págs. 172-174.
[14] Apéndice del recurso de *Certiorari*, págs. 175-180.
[15] Apéndice del recurso de *Certiorari*, págs. 172-174.
[16] Apéndice del recurso de *Certiorari*, págs. 181-182.

Por otro lado, el 27 de noviembre de 2024, los recurridos presentaron una *Moción de Reconsideración de Sentencia Parcial (Carlos L. Lebrón Gómez y Nannette De La Rosa)*[17] en la que insistieron que no existía una alegación sobre confusión o separabilidad de personas jurídicas entre Qualcon y los peticionarios, pues reconocían que eran personalidades separadas. Asimismo, arguyeron que no se debía determinar la procedencia de la solicitud de desestimación, porque no contemplaba parte de las alegaciones. Por esto, establecieron que es como si la separabilidad jurídica no permitiera que se hagan alegaciones contra los peticionarios, lo que equivaldría a una inmunidad para personas naturales por el hecho de poseer una corporación.

Consecuentemente, el 2 de diciembre de 2024 y notificada al día siguiente, mediante una *Resolución dejando sin efecto Sentencia Parcial*, el TPI determinó que la *Demanda* contenía numerosas alegaciones en contra del señor Lebrón Gómez, independientemente de su desempeño como representante de Qualcon. Por tanto, dejó sin efecto la desestimación a favor de los peticionarios y les ordenó contestar la *Demanda* en el término de veinte (20) días.

Inconformes aun, el 10 de abril de 2025, los peticionarios comparecieron ante este foro intermedio apelativo mediante el recurso de epígrafe y plantearon los siguientes errores:

> PRIMER ERROR: Erró el Tribunal de Primera Instancia al denegar la Moción de Desestimación, descartando las normas sobre la relatividad de los contratos y las acciones *ex contractu.*

> SEGUNDO ERROR: Erró el Tribunal de Primera Instancia al denegar la Moción de Desestimación, descartando las normas sobre la personalidad jurídica separada e independiente y la representación.

> TERCER ERROR: Erró el Tribunal de Primera Instancia al hacer determinaciones de hechos no probados.

> CUARTO ERROR: Erró el Tribunal de Primera Instancia al denegar la Moción de Desestimación, considerando meras etiquetas, alegaciones insuficientes, generales, conclusorias,

---

[17] Apéndice del recurso de *Certiorari*, págs. 183-189.

laxas y excesivamente vagas, carentes de hechos demostrativos que justifiquen la concesión de un remedio.

Por su parte, el 21 de abril de 2025, los recurridos presentaron *Moción en Cumplimiento de Orden,* en la cual establecieron que la solicitud de *Certiorari* de los peticionarios no cumplía con los requisitos de la Regla 40 del Tribunal de Apelaciones[18]. Posteriormente, el 15 de mayo de 2025, presentaron la *Oposición a Certiorari.* Sin embargo, para fines de nuestro análisis, no se tomará en consideración la referida oposición, por haberse presentado fuera del término concedido[19].

Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

## II.

### -A-

El auto de *Certiorari* es un recurso procesal discrecional y extraordinario mediante el cual un tribunal de mayor jerarquía puede rectificar errores jurídicos en el ámbito de la Regla 52.1 de Procedimiento Civil[20] y conforme a los criterios que dispone la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.* Nuestro ordenamiento judicial ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto[21]. Esta norma de deferencia también aplica a las decisiones discrecionales de los tribunales de instancia. En cuanto a este particular, el Tribunal Supremo de Puerto Rico ha expresado lo siguiente:

> No hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso

---

[18] 4 LPRA Ap. XXII-B, R.40.
[19] Véase Resolución del 21 de abril de 2025 emitida por este foro.
[20] 32 LPRA Ap. V, R. 52.1.
[21] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[22]

En ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no corresponde intervenir con las determinaciones del Tribunal de Primera Instancia[23]. No obstante, la Regla 52.1, *supra*, faculta nuestra intervención en situaciones determinadas por la norma procesal. En específico establece que:

> [...] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[24]
> [...]

En armonía con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[25], para dirigir la activación de nuestra jurisdicción discrecional en estos recursos dispone que para expedir un auto de *Certiorari*, este Tribunal debe tomar en consideración los siguientes criterios:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

---

[22] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[23] *García v. Padró*, 165 DPR 324, 334-335 (2005); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 180 (1992).
[24] 32 LPRA Ap. V, R. 52.1.
[25] 4 LPRA Ap. XXII-B, R. 40.

E. Si la etapa del procedimiento en que se encuentra el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *Certiorari*[26]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[27].

**-B-**

Según el Código Civil de Puerto Rico, los contratos son "el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones"[28]. De igual forma dispone que los contratos son ley entre las partes[29]. Ante el incumplimiento de una obligación contractual que produce daños a una de las partes contratantes procede una acción de daños y perjuicios[30]. El Código Civil también establece que el negocio jurídico solo produce efecto para su autor[31]. Conocidas como acciones *ex contractu*, estas "se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por objeto que se cumplan las promesas sobre las cuales las partes otorgaron su consentimiento"[32]. El Tribunal Supremo ha resuelto que las acciones *ex contractu* solo pueden ser ejercitadas por una parte contratante en contra de la

---

[26] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[27] *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).
[28] 31 LPRA sec. 9751.
[29] 31 LPRA sec. 9754.
[30] *Soc. de Gananciales v. Velez & Asoc.*, 145 DPR 508, 521 (1998).
[31] 31 LPRA sec. 6301.
[32] *Trinidad v. Chade*, 153 DPR 280, 290 (2001).

otra[33]. Como regla general las obligaciones de la corporación obligan a esta y no a sus accionistas[34].

Por otra parte, una corporación tiene personalidad jurídica y patrimonio propio, distinto y separado a la de sus accionistas[35]. La corporación se caracteriza, entre otros, por tener responsabilidad limitada, la cual se oficializa cuando se obtiene un certificado de incorporación por parte del Secretario de Estado[36]. La corporación es titular de su patrimonio y esta responderá respectivamente por sus propias obligaciones[37]. Por lo tanto, las responsabilidades de sus accionistas se limitan al capital que aportaron al patrimonio de la corporación[38]. A manera de excepción, un accionista puede responder por las deudas corporativas bajo la doctrina de descorrer el velo corporativo[39]. La esencia de esta doctrina es "evitar la utilización indebida de la corporación como instrumento para perpetuar un fraude o una acción ilegal"[40]. El Profesor Díaz Olivo puntualizó los principios rectores de la doctrina, a saber:

> 1. La aplicación de la doctrina depende de los hechos específicos de cada caso;
> 2. El ignorar la entidad corporativa constituye la excepción a la regla;
> 3. La corporación posee una personalidad jurídica separada y distinta de sus accionistas y la regla general es al efecto de que la existencia de la corporación, independientemente de sus accionistas no puede ser ignorada o descartada;
> [...]
> 5. El mero hecho de que una persona sea el único accionista de una corporación no conlleva de por sí la imposición de responsabilidad individual;
> 6. El peso de la prueba recae sobre la parte que busca descorrer el velo y propone la imposición de responsabilidad individual a los accionistas;
> 7. El peso de la prueba no se descarga con la mera alegación de que la empresa es un alter ego de los accionistas;
> 8. La prueba del que solicita el desconocimiento debe ser prueba fuerte y robusta;

---

[33] *Rivera Sanfeliz v. Jta. Dir. FirstBank,* 193 DPR 38, 57 (2015).

[34] C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo,* Ed. AlmaForte, 2018, pág. 143.

[35] *DACO v. Alturas Fl. Dev. Corp. y otro,* 132 DPR 905, 924 (1993); *Sucesión Santaella v. Srio. de Hacienda,* 96 DPR 442, 451 (1968).

[36] C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo,* [s. Ed.], 2016, págs. 15 y 104. *Véase* 14 LPRA sec. 3505.

[37] *Íd.,* pág. 19.

[38] *DACO v. Alturas Fl. Dev. Corp. y otro,* 132 DPR 905, 925 (1993).

[39] C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo,* Ed. AlmaForte, 2018, pág. 117.

[40] *Id.* pág. 118.

[...][41]

El Tribunal Supremo ha reconocido que se debe demostrar que no existe la separación adecuada entre la corporación y los accionistas, de tal modo que, hacer valer la personalidad jurídica equivaldría a "sancionar un fraude, promover una injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen"[42]. Por lo tanto:

> [P]ara que prospere una solicitud de rasgar el velo, es imprescindible que el demandante identifique en sus alegaciones aquellos actos y conductas específicas de naturaleza ilegal o fraudulenta por parte de los accionistas que establecen que la corporación es un mero artificio suyo para la comisión de actos fraudulentos que justifica, por excepción, imponerles responsabilidad personal. Si estos actos no se identifican con precisión en la demanda, no hay base jurídica para imponer responsabilidad personal a los accionistas[43].

Por último, para invocarse la defensa con éxito, se entiende necesario que concurra (1) el uso de la corporación para realizar actos ilegales o fraudulentos y (2) que la corporación sea un mero instrumento, agente o alter ego de sus dueños[44].

### -C-

La moción de desestimación al amparo de la Regla 10.2 de Procedimiento Civil[45], "es aquella que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra"[46]. La citada regla dispone que la parte demandada puede presentar una moción de desestimación en la que alegue las defensas siguientes:

> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) **dejar de exponer una reclamación que justifique la concesión de un remedio**;

---

[41] *Id.* pág. 120.
[42] *DACO v. Alturas Fl. Dev. Corp. y otro,* 132 DPR 905, 927 (1993). *Véase Srio. DACO v. Comunidad San José, Inc.,* 130 DPR 782, 798 (1992).
[43] C. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo,* Ed. AlmaForte, 2018, pág. 141.
[44] *Íd.,* pág. 146.
[45] 32 LPRA Ap. V, R. 10.2.
[46] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008).

(6) dejar de acumular una parte indispensable[47].

Al resolver una moción de desestimación bajo la Regla 10.2 (5), *supra,* los tribunales deberán tomar "como ciertos todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente, y que de su faz no den margen a dudas"[48]. La norma que impera es que "tales alegaciones hay que interpretarlas conjuntamente, liberalmente, y de la manera más favorable posible para la parte demandante"[49]. Por lo tanto, "al examinar la demanda para resolver este tipo de moción se debe ser sumamente liberal y únicamente procedería [desestimar] cuando de los hechos alegados no podía concederse remedio alguno a favor del demandante'"[50]. Además, "[t]ampoco procede la desestimación, si la demanda es susceptible de ser enmendada"[51]

Nuestro máximo foro judicial ha expresado que al examinar una moción de este tipo **"debemos considerar, 'si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'"**. (Énfasis nuestro)[52]. Además, el Tribunal debe aceptar como ciertos todos los hechos que hayan sido bien alegados en la demanda y excluir de sus análisis conclusiones legales. Luego, debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una

---

[47] 32 LPRA Ap. V, R. 10.2." (Énfasis en el original). *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 234 (2016).
[48] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 428.
[49] *Íd.,* pág. 429.
[50] *Colón Rivera v. Secretario, et al,* 189 DPR 1033, 1049 (2013), que cita a R. Hernández Colón, *Derecho Procesal Civil,* 4ta ed., San Juan, Ed. Lexis-Nexis, 2007, pág. 231.
[51] *Aut. Tierras v. Moreno & Ruiz Dev. Corp., supra,* pág. 429.
[52] *Íd.,* que cita a *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 DPR 497 (1994), *Unisys v. Ramallo Brothers,* 128 DPR 842 (1991).

demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba[53].

El doctor Cuevas Segarra nos comenta que el Tribunal Supremo de Puerto Rico explicó de forma acertada en *Reyes v. Sucn. Sánchez Soto* lo siguiente:

> El texto de la actual Regla es a[u]n más favorable para un demandante, ya que la moción para desestimar no ha de considerarse s[o]lo a la luz de una causa de acción determinada y sí a la luz del derecho del demandante a la concesión de un remedio, cualquiera que [e]ste sea. En vista de ello, las expresiones que hicimos en el caso de Boulon, particularmente la de que una demanda no debe ser desestimada por insuficiencia, **a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación**, tienen aún mayor virtualidad [...] (Énfasis nuestro).

Para que el demandado prevalezca al presentar una moción de desestimación al amparo de la Regla 10.2 (5), *supra,* "debe establecer con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que pueda ser probado en apoyo a su reclamación, aun interpretando la demanda de la forma más liberal posible a su favor"[54]. Sin embargo, esto último "se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente que de su faz no den margen a dudas"[55].

Por último, cabe mencionar que se plantea que cuando se presenta una moción de desestimación bajo la Regla 10. 2(5), *supra,* "[l]a controversia no es si el demandante va finalmente a prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos [correctamente] alegados en la demanda". Así pues, al analizarse una moción de desestimación presentada tras una demanda "el tribunal debe concederle el

---

[53] R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 268.

[54] *Íd.,* pág. 530.

[55] Cuevas Segarra, *op. cit.*, pág. 529.

beneficio de cuanta inferencia sea posible de los hechos alegados en dicha demanda"[56].

## III.

Tras examinar minuciosamente el expediente, incluyendo la Resolución emitida por el foro primario y los argumentos presentados por las partes, en relación con los criterios de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* no identificamos que el TPI haya incurrido en prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba que amerite la intervención de este Tribunal de Apelaciones **en esta etapa de los procedimientos.**

En el presente caso, los peticionarios no han demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos, por tanto, procede que se deniegue el recurso de *certiorari* de epígrafe.

## IV.

Por los fundamentos expuestos, ***denegamos*** la expedición del auto de *certiorari* solicitado.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[56] *Íd.,* pág. 532.

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| ELMER FIGUEROA ARCE y OTROS<br>Recurridos<br><br>v.<br><br>QUALCON GENERAL CONTRACTOR, INC y OTROS<br>Demandados<br><br>CARLOS D. LEBRÓN GÓMEZ, NANETTE M. DE LA ROSA MARTÍNEZ Y LA SOCIEDAD LEGAL DE BIENES GANANCIALES CONSTITUIDA POR ELLOS<br>Peticionarios | KLCE202500371 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm. CG2024CV02795<br><br>Sobre:<br>Daños por Vicios de Construcción y otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

## VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO

Según las propias alegaciones de la *Demanda* presentada por los recurridos de epígrafe, estos contrataron a Qualcon para que llevara a cabo la remodelación y expansión del proyecto La Loma[1]. Es decir, las partes que resultaron obligadas fueron los recurridos y la referida corporación, **no** los recurridos con los peticionarios.

Entonces, por virtud del reconocimiento que nuestro ordenamiento concede a la personalidad jurídica de dicha corporación, para que los recurridos pudiesen rasgar el velo corporativo, de modo que quedaran habilitados de dirigir acciones contra los aquí peticionarios, necesariamente tenían que incorporar en la *Demanda* presentada alegaciones relativas a lo siguiente: 1) que no existía una separación adecuada entre la corporación y estos; 2) que reconocer personalidad jurídica a la referida corporación equivaldría a sancionar un fraude, promover injusticia, evadir una obligación estatutaria, derrotar la política pública, justificar la inequidad, proteger el fraude o defender el crimen. *D.A.Co. v. Alturas Fl. Dev. Corp, y otro*, 132 DPR 905, 927 (1993).

---

[1] Apéndice del recurso de *certiorari*, pág. 44.

Sin embargo, al examinar la referida *Demanda*, esta **no contiene una sola alegación en la que se hubiese levantado tales asuntos**. En este sentido, no se trata de que la *Demanda* contenga *alegaciones directas relacionadas a la actividad del señor Lebrón González*, como concluye el TPI[2], sino que el análisis pertinente debió ser si de las alegaciones surgían las razones que la jurisprudencia reconoce para solicitar que se descorra el velo corporativo, en los términos apuntados en el párrafo que precede. Sencillamente, ese no es el caso en esta *Demanda*, pues nada se mencionó sobre que no existiera una adecuada separación entre la corporación y los peticionarios, mucho menos que dicha personalidad jurídica se utilizara para *sancionar el fraude*, o las demás actividades ya enumeradas en la jurisprudencia citada.

Se debería ya comprender que las actividades del ente jurídico son llevadas a cabo por personas naturales, como lo es el aquí peticionario Lebrón González, pero ello no supone que se le pueda demandar en su carácter personal, pues entonces de nada serviría el reconocimiento jurídico que nuestro ordenamiento concede a las corporaciones. Para haber podido demandarle, tenían que darse las alegaciones que ya discutí, y resultan del todo ausentes en la *Demanda*.

Por las razones que anteceden, respetuosamente disiento del curso decisorio elegido por mis compañeros jueces de Panel. Contrario a lo aquí decidido, hubiese expedido el recurso de *certiorari*, revocado el dictamen recurrido, y acogido la *Moción de desestimación* presentada por los peticionarios.

Por las razones expuestas, respetuosamente disiento.

En San Juan, Puerto Rico, a 23 de junio de 2025.

Nery Enoc Adames Soto
Juez de Apelaciones

---

[2] Apéndice del recurso de *certiorari*, pág. 99.